**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RNS SERVICING, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS R. CANHAM,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 15 cv 10216 |

**ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

NOW COMES Defendant, Thomas R. Canham, hereinafter "Canham", by and through his attorneys, and states the following for his Answer to Complaint:

**The Parties**

1. Plaintiff RNS is a limited liability company organized under the laws of the State of Illinois. RNS's principal place of business is in Skokie, Illinois. RNS has two members who are citizens and residents of the state of Illinois.

**ANSWER:** Canham lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore denies same.

2. Defendant Canham is a citizen and resident of the State of Florida.

**ANSWER:** Admit.

**Jurisdiction and Venue**

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. Sec. 1332 (a) because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

**ANSWER:** Admit.

4. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391 (b) a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

**ANSWER:** Admit.

**COUNT I**

**BREACH OF CONTRACT - PROMISSORY NOTE DATED AUGUST 29, 2008**

5. RNS realleges and incorporates by reference the allegations contained in paragraphs 1 through 4 as if fully set forth herein.

**ANSWER:** Canham restates and incorporates by reference his answers to allegations contained in paragraphs 1 through 4 as if fully set forth herein.

6. On or before August 29, 2008, IFC Credit Corporation ("IFC") and Canham entered into an agreement whereby IFC agreed to sell and Canham agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases with third persons to which IFC would otherwise be entitled to receive in connection with those specified equipment leases (the "Canham Residual Interests Agreement").

**ANSWER:** Admit.

7. At or before the time of entering into the Canham Residual Interests Agreement, Canham was made aware that the equipment lease residual interests were subordinate to the rights of one or more lenders and that in the event of any default by any equipment lessee the leased equipment could be repossessed and sold in order to satisfy the balance which IFC owned to any such lender or lenders who had an interest in the equipment leases.

**ANSWER:** Deny.

8. On or about August 29, 2008, IFC and Canham entered into and executed certain agreements which memorialized the Canham Residual Interests Agreement. These memorials included the following:

a. Residual Interest Sales Agreement dated August 29, 2008;

b. Residual Interest Sales Supplement Agreement ("Supplement") No. 01 dated August 29, 2008;

c. Bill of Sale dated August 29, 2008;

d. Chattel Mortgage Security Agreement dated August 29, 2008; and

e. Promissory Note dated August 29 which was executed by Canham as "Maker" (the "Canham Promissory Note").

See Group Exhibit A appended hereto and made a part hereof as if set forth herein which includes true and correct copies of the aforesaid documents which comprise the Canham Residual Interests Agreement.

**ANSWER:** Canham lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore denies same.

9. According to the terms of the Canham Residual Interests Agreement, IFC retained a collateral interest in certain equipment lease residuals to secure payment of Canham Promissory Note.

**ANSWER:** Deny.

10. In consideration for entering in the Canham Residual Interests Agreement, Canham was to receive residual interest payments based on the performance of the certain equipments leases.

**ANSWER:** Admit.

11. Canham directly received and/or had credited to the balance due and owing on the Canham Promissory Note residual interest payments received by IFC based on the performance of the certain equipment leases.

**ANSWER:** Canham lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore denies same.

12. By its terms, the Canham Promissory Note matured on August 26, 2013.

**ANSWER:** Canham lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore denies same.

13. Canham failed to make all payments due on the Canham Promissory Note.

**ANSWER:** Deny.

14. The terms of the Canham Promissory Note provided that "The holder hereof shall be required to look first to the collateral for the payment of this Note." **Group Exh. A-5**.

**ANSWER:** Canham lacks knowledge or information sufficient to form a belief about the truth of the allegation and therefore denies same.

15. IFC and RNS have looked to the collateral which secured the Canham Promissory Note but is unable to reduce any such collateral to liquid funds to pay down or pay off the Canham Promissory Note. However, even if IFC of RNS could reduce the collateral which

secured the Canham Promissory Note since one or more of the IFC's lenders has a first-in-time first-in-right priority interest in any and all residuals derived from that same collateral.

**ANSWER:** Deny.

16. On or about July 30, 2014, RNS entered into that certain Asset Purchase and Transition Services Agreement with David Leibowitz as Chapter 7 trustee of the Estate of IFC Credit Corporation for the purchase of, among other things, the debtor's right, title and interest in the Canham Promissory Note (the "Asset Purchase Agreement"). On or about August 7, 2014, the United States Bankruptcy Court for the Northern District of Illinois entered an order authorizing and approving the transaction contemplated in the Asset Purchase Agreement. RNS, therefore, holds all right, title and interest in the Canham Promissory Note and has standing to pursue this action.

**ANSWER:** Admit that on or about August 7, 2014, the United States Bankruptcy Court for the Northern District of Illinois entered an order authorizing and approving the transaction contemplated in the Asset Purchase Agreement. Canham lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore denies same.

17. RNS has made demand on Canham for payment of all sums due and owing it on the Canham Promissory Note.

**ANSWER:** Admit that RNS made demand on Canham for payment. Deny remaining allegations.

18. There remains due and owing Canham to RNS on the Canham Promissory Note the sum of $688,664.14.

**ANSWER:** Deny.

WHEREFORE, defendant, THOMAS R. CANHAM, prays that judgment be entered in his favor and against RNS SERVICING, LLC, together with costs, and such other relief as the Court deems just and proper.

**FIRST AFFIRMATIVE DEFENSE**
**(FRAUD)**

1. Plaintiff RNS is a limited liability company organized under the laws of the State of Illinois. RNS's principal place of business is in Skokie, Illinois. RNS has two members who are citizens and residents of the state of Illinois.

2. Defendant Canham is a citizen and resident of the State of Florida.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. Sec. 1332 (a) because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391 (b) a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois.

5. On or before August 29, 2008, Rudy Trebles ("Trebles") was an officer and employee of IFC Credit Corporation ("IFC").

6. On or before August 29, 2008, Trebles, on behalf of IFC, represented to Canham, among other things, that the financial condition of IFC had never been stronger, that he was about to sell IFC at a substantial profit, that he had an opportunity for Canham to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases with third persons to which IFC would otherwise be entitled to receive in connection with those specified equipment leases, that the leases were unencumbered and that

IFC had not pleadged the primary lease payment streams. Trebles further represented to Canham that IFC would make UCC filings on behalf of Canham in order to protect Canham's interests.

7. The representations made by Trebles, on behalf of IFC, were false statements of material facts and Trebles concealed the true facts from Canham.

8. Trebles, on behalf of IFC, knew that the representations he made to Canham were false when they were made or believed that the representations were false when they were made or made the representations in reckless disregard of whether the statements were true or false.

11. Trebles, on behalf of IFC, made the statements with the intent to deceive Canham and induce Canham to act.

12. Canham reasonably believed the statements, relied upon them and acted in justifiable reliance thereon.

13. Based on the foregoing, Canham entered into an agreement whereby IFC agreed to sell and Canham agreed to purchase certain rights, title and interest in and to certain residuals derived from certain specified equipment leases with third persons to which IFC would otherwise be entitled to receive in connection with those specified equipment leases.

14. Canham would not have entered into an agreement if he knew that the statements were false.

## SECOND AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

15. Canham realleges and incorporates by reference the allegations contained in paragraphs 1 through 14 of his First Affirmative Defense as if fully set forth herein.

16. IFC's conduct bars any recovery under the doctrine of unclean hands.

**THIRD AFFIRMATIVE DEFENSE**
**(LACHES)**

17. Plaintiff and IFC created unreasonable delay in bringing the claims he asserts in his Amended Complaint, and Defendant was unfairly burdened and prejudiced by said delay.

18. As such, all of the damages claimed by Plaintiff should be denied because Plaintiff and IFC sat on their rights.

**FOURTH AFFIRMATIVE DEFENSE**
**(EQUITABLE ESTOPPEL)**

19. Canham realleges and incorporates by reference the allegations contained in paragraphs 1 through 14 of his First Affirmative Defense as if fully set forth herein.

20. Plaintiff should be equitably estopped from making the claims asserted in its Complaint.

WHEREFORE, defendant, THOMAS R. CANHAM, prays that judgment be entered in his favor and against RNS SERVICING, LLC, together with costs, and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendant Thomas R. Canham hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable in this action.

Respectfully submitted,

THOMAS R. CANHAM

__Scott A. Morgan__________
One of his attorneys

Scott A. Morgan-6209550
Morgan Law Firm, Ltd.
55 West Wacker Drive, 9th Floor
Chicago, IL 60601
(312) 327-3386
smorgan@smorgan-law.com

John Sawin (IL 6227112)
Sawin Law Firm, Ltd.
55 West Wacker Dr., Suite 900
Chicago, Illinois 60601
Tel. 312.853.2490
Facsimile 312.327.7072
jsawin@sawinlawyers.com